Brian T. Kiolbasa, OSB No. 112890
kiolbasab@lanepowell.com
**LANE POWELL PC**
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204
Telephone:  503.778.2100
Facsimile:  503.778.2200

Attorneys for Defendant Hillsboro Medical
Center

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MARITTA ERICKSON,<br><br>                              Plaintiff,<br><br>       v.<br><br>HILLSBORO MEDICAL CENTER and<br>TRANSAMERICA RETIREMENT<br>ADVISORS, LLC,<br><br>                              Defendants. | Case No. 3:22-cv-01208-HZ<br><br>**DEFENDANT HILLSBORO<br>MEDICAL CENTER'S MOTION FOR<br>ENTRY OF JUDGMENT UNDER<br>RULE 52** |

## I.  **LOCAL RULE 7-1 CERTIFICATION**

Pursuant to Local Rule 7-1(a)(1)(A), counsel for Hillsboro Medical Center has conferred

with counsel for plaintiff regarding the issues in dispute, which the parties were unable to resolve.

## II.  **MOTION**

Pursuant to Federal Rule of Civil Procedure 52, defendant Hillsboro Medical Center

("HMC")[1] moves for an order entering judgment on its behalf and to enter findings of fact and

---

[1] Certain documents in the Administrative Record refer to Tuality Healthcare or include Tuality
Healthcare's letterhead.  HMC was known as Tuality Healthcare prior to 2020.  For clarity and
ease of reference, defendant is identified as "HMC" throughout this motion except to reference the
title of specific documents or unless context otherwise requires.

PAGE 1 –  **DEFENDANT HILLSBORO MEDICAL CENTER'S**
              **MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

conclusions of law that HMC correctly determined that plaintiff Maritta Erickson is not entitled to additional benefits under the terms of the retirement pension plan sponsored by HMC that is at issue.

### III.  INTRODUCTION

This lawsuit involves claims by plaintiff Maritta Erickson ("Erickson"), a retired registered nurse, relating to her retirement pension benefits under a retirement pension plan sponsored by her former employer, HMC.

Erickson worked for HMC for over 30 years, from 1986 to 2020.  Following her retirement, Erickson raised concerns that her retirement benefits were not correctly calculated.  Specifically, Erickson believed that she had worked more than 1,000 hours in four years (1996, 1997, 2000, 2001), which was required to count as a "Year of Benefit Service" under the terms of the retirement plan.  In response, HMC engaged in communications with Erickson, researched and analyzed relevant records, and provided Erickson with detailed responses to her questions.  Erickson did not credit HMC's response and requested an independent review.  HMC's Plan Fiduciary Committee conducted an independent review, and subsequently denied Erickson's claim because HMC's payroll records did not support a finding that Erickson had surpassed the 1,000-hour threshold in the years in question.

Later, Transamerica Retirement Solutions, LLC ("Transamerica"), the recordkeeper for the retirement plan, notified Erickson that one component of her retirement benefit had been miscalculated, resulting in her receiving more than she was entitled to.  Erickson's monthly benefits were thereafter corrected pursuant to the requirements of the retirement plan, although she was not required to repay the sums that had been overpaid in error.  Erickson again wrote to HMC to obtain information and contest the correction, and HMC again responded by providing documents and answering questions.  Dissatisfied with HMC's responses, Erickson filed suit.

Although Erickson may disagree with HMC's determinations, there is nothing in the Administrative Record that supports her contentions that she surpassed 1,000 hours in any of the four years in question.  Further, Erickson received the benefit of the overpayments but was not

PAGE 2 – **DEFENDANT HILLSBORO MEDICAL CENTER'S MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

required to repay them, and there is nothing in the plan language that entitles Erickson to continue to receive the inflated benefits—directly contrary to what she seeks through this lawsuit.

For those reasons, and as further discussed below, the Court should enter a judgment in defendants' favor, and dismiss Erickson's claims.

## IV.  FACTUAL BACKGROUND

**A.    Erickson's Work History and Participation in the Tuality Healthcare Retirement Plan.[2]**

Erickson was hired by HMC on October 20, 1986.  (Compl. ¶ 8; AR 1045.)  She retired on June 15, 2020.  (Comp. ¶ 8.)  As part of her compensation package, Erickson participated in the Tuality Healthcare Retirement Plan (the "Plan").  (*Id.* ¶ 9; AR 4-111 (duplicate copy at AR 440-547); AR 548-598 (Summary Plan Description).)  As recited therein, the Plan was established in 1967, and was amended to freeze participation and benefit accruals effective August 31, 2012.  (AR 8; AR 549.)  Erickson was a participant in the Plan during the course of her employment at HMC, until the Plan was frozen in August 2012.  (Compl. ¶ 5.[3])

After the Plan was frozen, beginning September 1, 2012, HMC's employees were given the option of participating in the Tuality Healthcare Cash Balance Pension Plan (the "Cash Balance Plan").  (AR 118 (noting establishment of Cash Balance Plan); AR 599-662 (Cash Balance Plan); AR 663-717 (Cash Balance Plan Summary Plan Description).)  Erickson participated in the Cash Balance Plan from September 1, 2012, through May 31, 2020.  (Compl. ¶ 9.)

**B.    Relevant Policy Terms.**

HMC is the plan sponsor and administrator of the Plan and a fiduciary under the provisions of ERISA.  (Compl. ¶ 6 (noting applicable statutory provisions); AR 25 (identifying HMC as "Sponsoring Company"); AR 69 (identifying Sponsoring Company as "Plan Administrator").)  As the plan administrator, HMC is granted the authority to supervise the administration of the Plan,

---

[2] The factual record is largely undisputed by the parties, and the merits of this dispute will be resolved based on the interpretation of the applicable terms of the Plan.  Accordingly, HMC sets forth only a brief factual recitation to provide the Court context.

[3] Erickson's Complaint refers to the Plan as the "Frozen Plan."

PAGE 3 – **DEFENDANT HILLSBORO MEDICAL CENTER'S MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

interpret the Plan's provisions, determine eligibility, and to authorize disbursements, among other powers.  (AR 69-70.)  Further, with respect to claims procedures, the Plan vests HMC with discretion to determine eligibility for benefits and to construe the Plan's terms:

> **Further Review**.  Any further review, judicial or otherwise, of the decision on review shall be based on the record before the Plan Administrator and limited to whether, in the particular instance, the Plan Administrator acted arbitrarily or capriciously in the exercise of its discretion.  In no event shall any such further review, judicial or otherwise, be on a de novo basis as the Plan Administrator has discretionary authority to determine eligibility for benefits and to construe the terms of this Plan.

(AR 74.)

## C.    Erickson Questions the Accuracy of Her Years of Benefit Service.

Shortly after her retirement, on June 24, 2020, Erickson wrote to Transamerica and representatives from HMC to question why she was not being credited with a year of "Benefit Service" for four years:  1996, 1997, 2000, and 2001.  (AR 249.)  Two days later, Erickson sent a supplemental letter to HMC, stating that she had received matching benefits under a 403(b) retirement account for those years, leading her to believe that she had met the 1,000 hour threshold in each year.  (AR 250-265.)  Erickson speculated that her "low census" hours may not have been counted towards her hours of service in those years.  (AR 253.)

HMC responded in a letter dated September 24, 2020, in which it stated that it treated Erickson's letter as a formal claim under ERISA.  (AR 266-272.[4])  The letter explained that, with respect to "low census" hours that Erickson believed may have been omitted, "the records found in [HMC's] HR information system for each year either perfectly matched the paystubs you provided or exceeded the number of low census hours on your paystubs because some paystubs were missing.  In no instance did the paystubs you provided reflect low census hours that our records did not."  (AR 267.)  With respect to Erickson's question regarding her 403(b) matches, HMC noted that Erickson had in fact <u>not</u> received matches for the four years in question, and

---

[4] A substantively identical letter was sent to Erickson dated September 15, 2020.  (AR 277-279.)

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

explained that Erickson was misinterpreting the records she was relying upon. (*Id.*) Finally, HMC included a breakdown of hours by pay period for the four years in question, itemizing in color the figures that it relied upon in reaching its determination. (*Id.*; AR 793-904.)

Erickson wrote to HMC again on October 2, 2020, requesting an independent review of her claim denial. (AR 273-276.) HMC responded in a letter,[5] which also furnished numerous documents that Erickson had requested. (AR 289-424.)

On February 5, 2021, HMC notified Erickson by letter that the independent review performed by the Plan's Fiduciary Committee had denied her claim. (AR 437-439.) Among other materials, the Fiduciary Committee reviewed the Plan documents, applicable policies and procedures, Erickson's hours from 1986-2020, Erickson's prior communications, and related materials. (*Id.*) The letter explained that HMC's records relating to Erickson's hours of work were accurate, and sufficient evidence was neither presented with the claim nor found during the review that proved them to be incorrect. (*Id.*)

The documents addressed above—consisting of nearly 200 pages—were provided to Erickson's current counsel on July 14, 2022. (AR 247-439.)

## D.    Transamerica Notifies Erickson that Her Pre-1988 Benefits Were Overpaid.

On April 9, 2021, Transamerica notified Erickson that an error had been discovered regarding her pre-1988 benefit calculation. (AR 166-169.[6]) Transamerica's letter explained: "The portion of your Normal Retirement Benefit derived from your employment through December 31, 1987 was incorrectly applied as an annual value instead of a monthly value, causing your overall

---

[5] One copy of HMC's response is misdated July 14, 2022. An identical letter, dated December 22, 2020, appears at AR 434-436.

[6] As described in the Plan and as it applies to Erickson, the benefits paid under the Plan consist of (1) pre-1988 earnings calculated as "1 percent of the Participant's Monthly Earnings during each Plan Year;" and (2) "[f]or each year of Benefit Service after December 31, 1987, 1 percent of the Participant's Highest Average Earnings." (*See* AR 38-39 (stating formula for calculation of "Normal Retirement Benefit").) *See also* AR 133, 564 (Summary Plan Description stating same).

PAGE 5 – **DEFENDANT HILLSBORO MEDICAL CENTER'S
MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

benefit to be overstated." (AR 167.) The letter further set forth both the correct and incorrect calculations, explained that Erickson's benefit amount would be decreased to the correct sum going forward, and notified her that she would <u>not</u> be required to repay the overpayment of $2,651.01, although repayment could have been required under the terms of the Plan.[7] (AR 167-168.) The correction resulted in Erickson's total monthly accrued benefit being reduced to $1,378.17 from $1,636.29. (*Id.*)

**E.     Erickson Raises Questions Relating to the Overpayment of Benefits; Retains Counsel.**

Shortly after receiving Transamerica's letter regarding the overpayment, Erickson wrote to HMC, raising concerns about how the overpayment was handled, its impact on her benefits, and her intent to seek legal counsel. (AR 171-177.)

HMC once again treated Erickson's letter as a formal claim subject to ERISA, and responded to Erickson in a letter dated May 20, 2021, providing detailed explanations in response to each issue that Erickson had raised. (AR 180-182.) Erickson replied to HMC and requested additional time to respond. (AR 179.)

On August 9, 2021, prior counsel for Erickson sent a letter to HMC, again contesting the correction of the overpayment of Erickson's pre-1988 benefit and requesting that Erickson continue to receive benefits at the higher, incorrect rate. (AR 184-193.) HMC responded to Erickson's prior counsel in a letter dated October 8, 2021, denying her request to continue receiving the higher, incorrect benefit payments. (AR 244-246.) HMC explained that estimates of Erickson's pre-1988 benefit provided between 2012-2018 were accurate, and that in any event, the estimates stated that they were subject to change. (*Id.*) HMC also noted that the terms of the Plan must be faithfully applied, so an exception could not be made to benefit Erickson solely at the expense of other plan participants. (*Id.*)

---

[7] *See* AR 74 (addressing overpayments and providing that in the event of an overpayment, "the Plan Administrator shall make reasonable efforts to recover the overpayment in accordance with applicable Internal Revenue Service and Department of Labor guidelines.")

PAGE 6 – **DEFENDANT HILLSBORO MEDICAL CENTER'S MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

Erickson later retained her current counsel, who was provided all of the above records—consisting of over 200 pages—on May 18, 2022.  (AR 1-246.)

**F.**    **Erickson Files Suit Challenging the Years of Service Determination and the Correction of Her Pre-1988 Benefits.**

Erickson initiated this action by filing her Complaint on August 16, 2022, which recites the events and communications discussed above.  (*See* Compl. ¶¶ 1-20.)  The Complaint then demands benefits "withheld as the result of Defendants' incorrect calculations" under both the Plan and the Cash Balance Plan and seeks to "clarify her rights to receive correct future retirement pension benefits under both the Frozen Plan and the Cash Balance Plan."  (*Id.* ¶ 22.)

As discussed more fully below, although Erickson refers generally to the Cash Balance Plan in her Complaint, there are no allegations relating to it sufficient to state a claim.  Furthermore, Erickson has never pursued a claim related to the Cash Balance Plan as required by the plan's terms, so to the extent Erickson attempts to seek recovery under the Cash Balance Plan, she has failed to exhaust her administrative remedies.

As for Erickson's two claims relating to the Plan, both have been considered, thoroughly analyzed, and addressed as part of the administrative process.  Although she may disagree with the ultimate outcome, Erickson cannot establish that HMC's actions or decisions amount to "arbitrary or capricious" conduct which is required for her to prevail on her claims.  Accordingly, judgment should be entered in defendants' favor, and Erickson's claims should be dismissed.

## V.  <u>APPLICABLE STANDARDS</u>

**A.**    **Trial on The Record Under Federal Rule of Civil Procedure 52(a)(1) and the Associated Burden of Proof.**

The parties agree this matter is governed by ERISA.  (*See* ECF No. 1 (Complaint) at ¶ 2; ECF No. 11 (HMC's Answer) at ¶ 2.)  The Ninth Circuit has determined that ERISA disputes may be resolved through a bench trial on the administrative record.  *See Kearney v. Standard Ins. Co.*,

PAGE 7 –  **DEFENDANT HILLSBORO MEDICAL CENTER'S MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

175 F.3d 1084, 1095 (9th Cir. 1999). A bench trial on the record requires the judge to make findings of fact under Rule 52(a). *Id.*

Erickson has asserted a claim for benefits under ERISA's civil enforcement provision, which provides that a plan participant may bring an action "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In ERISA cases such as this, "[t]he plaintiff bears the burden of proof on a [Section] 1132(a)(1)(B) claim." *Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 722 (9th Cir. 2021) (citation omitted); *see also Goetz v. Life Ins. Co. of N. Am.*, 272 F. Supp. 3d 1225, 1233 (E.D. Wash. 2017) ("In ERISA cases, the claimant bears the initial burden of establishing the claim falls within the scope of coverage." (citation omitted); *see also Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) ("A plaintiff suing under [29 U.S.C. § 1132(a)(1)(B)] bears the burden of proving his entitlement to contractual benefits.").

**B.    The Court's Review is Subject to an "Abuse of Discretion" Standard.**

The denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed under a "de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan unambiguously grants discretion to the administrator or fiduciary, the standard of review shifts to abuse of discretion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (*citing Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999) (en banc). Generally, this means courts will determine whether the administrator's decision is a reasonable interpretation of the record or, in contrast, illogical or unsupported by the record. *Smith v. Pitney Bowes, Inc. Long-term Disability Plan*, No. 6:21-CV-1422-MC, 2022 WL 3577036, at *4 (D. Or. Aug. 19, 2022) (*citing Black v. Hartford Life Ins. Co.*, No. 3:17-CV-1785-HZ, 2019 WL 2422481 at *2 (D. Or. June 10, 2019)).

PAGE 8 – **DEFENDANT HILLSBORO MEDICAL CENTER'S MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

Here, an abuse of discretion standard of review is required due to the plain terms of the Plan, which vests discretion to HMC as the plan administrator to supervise the administration of the Plan, interpret the Plan's provisions, determine eligibility, and authorize disbursements, among other powers. (AR 69-70.) Further, with respect to claims procedures, the Plan grants HMC discretion to determine eligibility for benefits and to construe the Plan's terms:

> **Further Review**. Any further review, judicial or otherwise, of the decision on review shall be based on the record before the Plan Administrator and limited to whether, in the particular instance, the Plan Administrator acted arbitrarily or capriciously in the exercise of its discretion. In no event shall any such further review, judicial or otherwise, be on a de novo basis *as the Plan Administrator has discretionary authority to determine eligibility for benefits and to construe the terms of this Plan*.

(AR 74 (emphasis added).)

As one Oregon court summarized in *Roth v. Prudential Ins. Co. of Am.*, 752 F. Supp. 2d 1160, 1165 (D. Or. 2010) (cleaned up[8]):

> The abuse of discretion standard of review does not permit the overturning of a decision where there is substantial evidence to support the decision, that is, where there is relevant evidence that reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence. In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion. The court is limited to consideration of the evidence reviewed by the plan administrator at the time the decision was made.

Here, there is a distinct <u>lack</u> of evidence in the record that calls into question HMC's determinations regarding Erickson's entitlement to benefits. Accordingly, under the Plan's terms and applicable law, Erickson must establish that HMC "acted arbitrarily or capriciously in the exercise of its discretion" in denying her claims, and the Court must find in favor of HMC if there is "relevant evidence that reasonable minds might accept as adequate to support a conclusion even

---

[8] The "cleaned up" parenthetical indicates that internal quotation marks, brackets, ellipses, footnotes, and citations have been omitted to assist the reader. *See* https://lawprose.org/lawprose-lesson-303-cleaned-up-quotations-and-citations/.

PAGE 9 – **DEFENDANT HILLSBORO MEDICAL CENTER'S MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

LANE POWELL PC
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

if it is possible to draw two inconsistent conclusions from the evidence." *Roth*, 752 F. Supp. 2d at 1165. Erickson cannot satisfy her burden or overcome the evidence that supports HMC's determinations.

## VI. <u>ARGUMENT</u>

**A.    No Actionable Claim Has Been Made Under the Cash Balance Plan.**

**1.        The allegations in Erickson's Complaint are insufficient to state a claim under the Cash Balance Plan.**  At the outset, HMC must note that Erickson's Complaint fails to make any allegations related to the Cash Balance Plan that are sufficient to support a claim for relief. As the Court knows well, it is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). There are no allegations in the Complaint—factual or otherwise—that relate to the Cash Balance Plan, other than Erickson's conclusory declaration that she is entitled to relief under it. For that reason alone, any claim that relates to the Cash Balance Plan should be disregarded.

**2.        No claims relating to the Cash Balance Plan were raised administratively.**
Even if the Court finds the allegations relating to the Cash Balance Plan to be sufficient, Erickson's claims must still be rejected because the Cash Balance Plan requires a participant to "follow and exhaust the claims procedure described in this section before you file suit for benefits." (AR 699 (Summary Plan Description).[9]) Erickson never filed an administrative claim related to the Cash Balance Plan, and as a result, has failed to exhaust her administrative remedies. The Ninth Circuit has noted:

> Quite early in ERISA's history, we announced as the general rule governing ERISA claims that a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court. *Amato v. Bernard*, 618 F.2d 559, 566–68 (9th Cir. 1980). Although not explicitly set out in the statute, the exhaustion doctrine is consistent with ERISA's background, structure and legislative history and serves several important policy considerations, including the reduction of frivolous litigation, the

---

[9] The benefit claims procedure for the Cash Balance Plan is located at AR 639-641.

PAGE 10 –**DEFENDANT HILLSBORO MEDICAL CENTER'S
MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

> promotion of consistent treatment of claims, the provision of a
> nonadversarial method of claims settlement, the minimization of
> costs of claim settlement and a proper reliance on administrative
> expertise. *Id.* at 566–68. "Consequently the federal courts have the
> authority to enforce the exhaustion requirement in suits under
> ERISA, and [ ] as a matter of sound policy they should usually do
> so." *Id.* at 568.

*Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995).  The Ninth

Circuit has routinely applied this expectation in the ERISA context.  *See Moyle v. Golden Eagle*

*Ins. Corp.*, 239 F. App'x 362, 363 (9th Cir. 2007) (unreported) (affirming dismissal of Section

1132(a)(1)(B) claim where plaintiff failed to follow plan's administrative procedures for review);

*White v. Anthem Life Ins. Co.*, 832 F. App'x 483, 485 (9th Cir. 2020) (noting plan's requirement

to appeal adverse benefits decision prior to filing suit in district court and affirming summary

judgment to defendant).

By not submitting any claim to HMC regarding the Cash Balance Plan, Erickson failed to

comply with the Cash Balance Plan's internal review procedures and hence did not exhaust her

available administrative remedies.  Accordingly, denial of any claim related to the Cash Balance

Plan is required.

**B.     Ample Evidence Supports HMC's Determination that Erickson Did Not Meet the
         1,000 Hour Threshold in the Disputed Years.**

Erickson did raise two claims administratively, both related to the Plan.  However, neither

is supported by any evidence in the record, much less do they establish "arbitrary and capricious"

conduct on behalf of HMC in denying Erickson's claims, which are required to satisfy her burden

of proof.

**1.     HMC is entitled to rely on its payroll records.**  The records available to HMC

during its review of Erickson's years of benefit service inquiry were mostly limited to its own

payroll records, which established that Erickson had not worked the requisite 1,000 hours in the

years in question.  Erickson did not support any information that called HMC's records into

question.  No reasonable argument can be made that HMC's determination was "arbitrary and

capricious" or lacked facts in support of its determination.

PAGE 11 –**DEFENDANT HILLSBORO MEDICAL CENTER'S
MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

To the contrary, HMC conducted a thorough review of all records available to it and responded to Erickson's inquiry with an explanation that included a discussion of the relevant Plan terms, the issues Erickson had raised, the data reflected in HMC's records, and copies of the data that HMC relied upon.  (AR 266-272; AR 315-421.)

As another Court in this district has recently recognized:

> In reviewing for abuse of discretion, an ERISA plan decision "will not be disturbed if reasonable." *Conkright v. Frommert*, 559 U.S. 506, 521 (2010) (internal quotation marks omitted).  This Court "equate[s] the abuse of discretion standard with arbitrary and capricious review." *Tapley v. Locals*, 728 F.3d 1134, 1139 (9th Cir. 2013).  Under this standard, Deseret Mutual's interpretation of the plan language "is entitled to a high level of deference and will not be disturbed unless it is not grounded on any reasonable basis." *Id.* (internal quotation marks omitted).  Moreover, "[a] plan administrator abuses its discretion if it renders a decision without any explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or fails to develop facts necessary to its determination." *Anderson [v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trustees*, 588 F.3d 641, 649 (9th Cir. 2009)] (*citing Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 960 (9th Cir. 2001)).

*Estate of Dick by & through Dick v. Deseret Mut. Benefit Administrators*, No. 2:21-CV-01194-HL, 2023 WL 2071523, at *4 (D. Or. Feb. 17, 2023).  HMC's determination in this case was founded upon its payroll records and consideration of the factors that Erickson had identified.  It cannot be said that HMC's procedure or ultimate decision was arbitrary or capricious in any sense of those terms, nor can it be said that HMC's decision "is not grounded on any reasonable basis."

**2.      Erickson has not produced evidence that HMC's records are inaccurate, and Erickson's own recollections have shown to be unreliable.**  Erickson may argue that her statements and recollection of her personal experiences at HMC over two decades ago provide evidence that she exceeded the 1,000-hour threshold for the years in question.  However, the record establishes that Erickson's memory of events that occurred over two decades ago is not reliable.

For instance, a personnel action form from July 10, 1996, shows that Erickson reduced her hours from 54 per two-week pay period to 36 hours, and noted that she "has been working 36

PAGE 12 – **DEFENDANT HILLSBORO MEDICAL CENTER'S MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

LANE POWELL PC
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

[hours] regularly [the] past 3 months." (AR 422.) Assuming that Erickson worked her budgeted 54 hours per pay period in January-March 1996, and her budgeted 36 hours the remainder of the year, the end result would be 972 hours worked—just slightly above the 959.71 hours reflected in HMC's records. Moreover, Erickson recognized when she was hired that her "work schedule, the number of shifts and hours per week and the number of hours per shift may vary with the patient census and scheduling demands of the hospital[,]" and therefore her budgeted hours may not reflect her actual hours worked. (AR 1045.)

Although Erickson's recollection is that she worked enough hours to meet the 1,000-hour threshold in the four years in question, she has not identified any reason to doubt HMC's payroll records, much less any reason to find that HMC's determination was "arbitrary or capricious." As a result, Erickson's claims must be rejected.

## C. Erickson is Not Entitled to Higher Benefits for Her Pre-1988 Service.

Finally, Erickson is clearly not entitled to the higher, incorrect, benefits for her pre-1988 service. The terms of the Plan clearly contemplate the possibility that benefits may be overpaid, and likewise address the recovery of the overpaid funds from a participant. (AR 74.) Here, Transamerica detailed how Erickson's payments were miscalculated, identified the Plan terms that supported the correction, and made the appropriate reconciliation. (AR 167-169.) Further, HMC noted that estimates of Erickson's pre-1988 benefit provided between 2012-2018 were accurate, and that in any event, the estimates stated that they were subject to change. (AR 244-246.) Accordingly, Erickson's apparent reliance on Transamerica's estimates from 2018-2020 did not form any sort of contract or obligation (as her prior counsel had suggested), and there is no basis to find that the correction of the benefits Erickson received—which is required under the Plan's terms—was somehow in violation of ERISA or HMC's fiduciary duties. Rather, as HMC explained, it was and is obligated by law to follow the terms of the Plan. (*Id*.)

## VII.  CONCLUSION

For all of the above reasons, the Court should find that Erickson has not satisfied her burden and that HMC's actions and decisions were reasonable and in accordance with the terms of the

PAGE 13 – **DEFENDANT HILLSBORO MEDICAL CENTER'S**
**MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3

Plan.  The Court should enter a judgment in defendants' favor, and dismiss Erickson's claims, with prejudice.

DATED:  May 26, 2023

LANE POWELL PC


By:   s/  Brian T. Kiolbasa
Brian T. Kiolbasa, OSB No. 112890
Telephone:  503.778.2100
Attorneys for Defendant Hillsboro Medical Center

PAGE 14 – **DEFENDANT HILLSBORO MEDICAL CENTER'S MOTION FOR ENTRY OF JUDGMENT UNDER RULE 52**

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719771.0007/9393119.3