Megan E. Glor, OSB No. 930178
Email: megan@meganglor.com
John C. Shaw, OSB No. 065086
Email: john@meganglor.com
Megan E. Glor, Attorneys at Law, P.C.
707 NE Knott Street, Suite 101
Portland, OR 97212
Telephone: (503) 223-7400
Facsimile: (503) 751-2071

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MARITTA ERICKSON,<br><br>               Plaintiff,<br><br>     v.<br><br>HILLSBORO MEDICAL CENTER and TRANSAMERICA RETIREMENT ADVISORS, LLC,<br><br>               Defendants. | Case No. 3:22-cv-01208-HZ<br><br>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ..................................................................................................... iii

I.    Certification Under LR 7-1(a) ...........................................................................1

II.   Plaintiff's Motion ...............................................................................................1

III.  Introduction ........................................................................................................1

IV.   Statement of Facts ..............................................................................................3

V.    Discussion ..........................................................................................................5

      A.  The Standard of Review is Abuse of Discretion
         with Heightened Scrutiny ...........................................................................5

      B.  HMC Arbitrarily Calculated Ms. Erickson's Retirement
         Benefit Under the Frozen Plan ...................................................................8

           1.  HMC arbitrarily failed to credit Ms. Erickson
              with three Years of Benefit Service ...............................................9

               a.  HMC failed to credit Ms. Erickson with a
                  Year of Benefit Service for 1996 ......................................11

               b.  HMC failed to credit Ms. Erickson with a
                  Year of Benefit Service for 2000 ......................................14

               c.  HMC failed to credit Ms. Erickson with a
                  Year of Benefit Service for 2001 ......................................16

             2.  HMC arbitrarily computed Ms. Erickson's
               Average Monthly Compensation ...............................................18

             3.  HMC arbitrarily computed Ms. Erickson's
               Monthly Accrued Benefit Part C ...............................................20

             4.  After correcting defendants' errors,
               Ms. Erickson's monthly retirement benefit is $1,642.02 ...........22

C.  Defendants Should Be Ordered to Correct Ms. Erickson's
Retirement Benefit and to Pay the Correct Benefit Amount
Retroactively to July 1, 2020 ......................................................................23

VI.    Conclusion ...........................................................................................................25

## TABLE OF AUTHORITIES

**U.S. Supreme Court**

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)................................................... 5

**U.S. Court of Appeals**

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006)................................ 6, 7

*Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154 (9th Cir. 2001) ...................... 25

*Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623 (9th Cir. 2009)............................... 6

*Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008)...................... 6

*Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917 (9th Cir. 2012).................................... 6

**U.S. District Court**

*Petrusich v. Unum Life Ins. Co. of Am.*, 984 F. Supp.2d 1112,1116 (D. Or. 2013) ............................ 6

**Other Authorities**

28 U.S. § 1961 ....................................................................................................... 3, 26

29 U.S.C. 1132(a)(1)(B) ................................................................................................ 1, 5

29 C.F.R. § 2560.503-1(b)(5) ...................................................................................... 7, 8

Fed. R. Civ. Pro. 56......................................................................................................... 56

Local Rules of Civil Procedure 7-1(a) ............................................................................. 1

## I.  CERTIFICATION UNDER LR 7-1(a)

The undersigned certifies that the parties have made a good faith effort through telephone and Zoom conferences and a Judicial Settlement Conference to resolve this dispute, but have been unable to resolve all the issues.

## II.  PLAINTIFF'S MOTION

Plaintiff Maritta Erickson moves for summary judgment under Fed. R. Civ. Pro. 56.  Ms. Erickson seeks an order pursuant to ERISA § 502(a)(1)(B) and (a)(3), 29 U.S.C. § 1132(a)(1)(B) and (a)(3) declaring that defendants Hillsboro Medical Center ("HMC") and Transamerica Retirement Advisors, LLC ("Transamerica") erred and abused their discretion in their determination of Ms. Erickson's retirement pension benefits under the Tuality Healthcare Retirement Plan ("Frozen Plan") and ordering defendants to pay Erickson her correct retirement pension benefits effective July 1, 2020, her Benefit Commencement Date, in accordance with the evidence and the terms of the Frozen Plan.

## III.  INTRODUCTION

Ms. Erickson is a registered nurse who was hired by Tuality Healthcare (name changed to HMC in November, 2019) on October 20, 1986, and became a participant in the Frozen Plan on November 1, 1987.  Ms. Erickson remained a participant in the Frozen Plan until it was discontinued and replaced by the Cash Balance Plan on September 1, 2012.  She became a participant in the Cash Balance Plan on September 1, 2012, and remained a participant until her retirement on June 15, 2020, after approximately 34 years of nursing service at HMC.

At the time of her retirement, Ms. Erickson recognized that her Frozen Plan monthly retirement benefit was less than she had expected it to be. She questioned the calculation of her benefit, but HMC, the plan sponsor and administrator, denied that it had made errors and upheld

**PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT** -  Page 1 of 26

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

its benefit determination.  In April, 2021, ten months after Ms. Erickson retired, Transamerica, the plan recordkeeper, benefit calculator and administrator, notified her that an audit had found an error in the calculation of her Frozen Plan monthly retirement benefit and reduced the benefit accordingly.  Ms. Erickson again questioned the calculations used to determine her retirement benefit, but again HMC upheld its benefit determination.

HMC and Transamerica made multiple errors in their determination of Ms. Erickson's monthly retirement benefit under the Frozen Plan, which affected values used in the formula to calculate the Frozen Plan's retirement benefit:

- They failed to credit Ms. Erickson with the correct number of "Hours of Service" for 1996, 2000, and 2001, which resulted in each of those years not being counted as a "Year of Benefit Service";

- They failed to follow the Plan's provisions for calculating Ms. Erickson's "Highest Average Earnings";

- They failed to keep accurate, complete records of Ms. Erickson's monthly earnings during 1987.

Defendants' errors resulted in an underpayment of Ms. Erickson's Frozen Plan retirement benefit by $263.85 per month.

Ms. Erickson's counsel demonstrated to defendants in litigation that they  also made an error in the calculation of Ms. Erickson's monthly retirement benefit under the Cash Balance Plan that resulted in an underpayment of her Cash Balance benefit by $13.28 per month. In May, 2023, Transamerica acknowledged and conceded this error, adjusted the Cash Balance retirement benefit to the correct amount of $241.13 per month and paid Ms. Erickson back benefits.

Ms. Erickson requests this Court enter summary judgment in her favor declaring that $1,642.02 is her correct Frozen Plan monthly retirement benefit, ordering defendants to pay that benefit amount effective July 1, 2020 (the Benefit Commencement Date), ordering Defendants to continue paying that benefit amount so long as benefits are payable under the Frozen Plan, and ordering defendants to pay Ms. Erickson all back benefits she is owed from July 1, 2020 through the date of Judgment plus all contributions due or payable because of defendants' errors, plus interest on all arrears pursuant to 28 U.S.C. § 1961

## IV.  STATEMENT OF FACTS

Ms. Erickson is a Registered Nurse who began working at Tuality Healthcare (which became HMC in November 2019) on October 20, 1986.  AR 1026. She became a participant in the Tuality Healthcare Retirement Plan (the "Frozen Plan"), a defined benefit plan, on November 1, 1987, and remained a participant through August 31, 2012, when the Frozen Plan was discontinued. AR 1052, 8.  She then became a participant in the Tuality Healthcare Cash Balance Plan (the "Cash Balance Plan"), which is also a defined benefit plan, on September 1, 2012, and remained a participant through May 31, 2020. AR 1052. Ms. Erickson retired from HMC on June 15, 2020. AR 237.

When Ms. Erickson retired, HMC calculated her monthly retirement benefit to be $1,636.26 under the Frozen Plan (5 Year Certain & Life Annuity option) and $227.88 under the Cash Balance Plan (10 Year Certain & Life Annuity option), for a total of $1,864.14. AR 189-90. By email dated June 25, 2020, HMC informed Ms. Erickson that she did not meet the 1,000 hour/year threshold to earn a "Year of Benefit Service" for years 1996, 1997, 2000, and 2001 and that, therefore, those four years did not figure in the calculation of her Frozen Plan retirement benefit.  AR 1209.

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT** -  Page 3 of 26

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

By letters dated June 26, 2020 (to HMC) and July 1, 2020 (to Transamerica), Ms.

Erickson questioned HMC's and Transamerica's record keeping of her hours during the four

years in question. AR 251. In the June 26th letter, she explained:

> I have always been the 1st to volunteer to take Voluntary Low Census, when
> offered.  I do not see hardly any LC hours on the Payroll breakdown hours. I
> believe that those LC hours were accidentally left out from my hours, as they
> were transferred to Transamerica (when they took over).

AR 253. In the July 1st letter, she stated: "As I stated on the June 26th letter/fax documents, I

believe the Payroll hours are missing my low census hours for those four years!"  AR 1192.

By letter dated September 15, 2020, HMC informed Ms. Erickson that it was treating her

inquiries as a benefit claim under ERISA and the Frozen Plan's claim procedures. AR 277.

HMC denied her claim that 1996, 1997, 2000, and 2001 should be counted as "Years of Benefit

Service" and asserted that its record keeping of Ms. Erickson's hours to determine "Years of

Benefit Service" was correct. AR 278.

By Ms. Erickson appealed HMC's adverse decision by letter dated October 2, 2020, and

requested an independent review of her claim "pursuant to all rules under the plan." AR 273. She

sent another letter to HMC's Chief Nursing Officer and its CEO, dated November 8, 2020, again

questioning the omission of 1996, 1997, 2000 and 2001 as "Years of Benefit Service."  AR 280.

By letter dated February 5, 2021, HMC denied Ms. Erickson's appeal, refusing to approve

"Years of Benefit Service" for the four years in question. AR 437-39.

By letter dated April 9, 2021, Transamerica informed Ms. Erickson that it had conducted

an audit that had revealed that the Plan had been overpaying her Frozen Plan monthly retirement

based upon an error by the Plan.  AR 191 *Id.* Transamerica stated that her monthly benefit would

be adjusted "in accordance with the terms of the Plan going forward" but that she would not have

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

to repay the prior overpayments. AR 193. Beginning May 1, 2021, Ms. Erickson's monthly

retirement benefit was reduced by $258.09, from $1,636.26 to $1,378.17. AR 191.

Ms. Erickson responded, explaining to Plan fiduciaries by letter dated April 26, 2021,

that she had structured her retirement benefit options and Social Security retirement benefit start

date based upon HMC's original calculation of her monthly retirement benefit. AR 171-72. She

asked whether she could restructure the benefit in light of the reduction, asked HMC to delay

reduction to June 1st to give her time to seek legal assistance, and requested that HMC pay the

legal and accounting expenses she might incur in her investigation of the reduction. AR 173-74.

In May 2021, HMC acknowledged Transamerica's calculation error (AR 240) but denied Ms.

Erickson's requests to delay a benefit reduction and for the financial assistance she had

requested. AR 242. After further written communications with Ms. Erickson and her counsel

(AR 179, 184-85), HMC denied Ms. Erickson's appeal, stating that its decision was final and that

she had the right to sue under ERISA. AR 246.

This lawsuit was filed in August, 2022. Dkt. #1. In May 2023, Transamerica conceded

that Transamerica had erroneously calculated Ms. Erickson's retirement benefit under the Cash

Balance Plan and increased her monthly Cash Balance retirement benefit by $13.28/month and

paid Ms. Erickson $479.16 in back benefits and interest. Affidavit of John C. Shaw, Ex. A, B.

## V.  DISCUSSION

### A.  The Standard of Review is Abuse of Discretion with Heightened Scrutiny.

"[A] denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed

under a *de novo* standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Because the Frozen Plan

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT** -  Page 5 of 26

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

contains a discretionary clause that gives the plan administrator the authority to interpret the Plan and determine benefits payable under the Plan, the applicable standard of review is *abuse of discretion. See* AR 69,   Under a traditional application of that standard, the court defers to an administrator's decision unless it is "'(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (quoting *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011)).

However, the Ninth Circuit has "gradually refined and restated" the test for this standard under *Salomaa,* 642 F.3d at 673. When "an administrator operates under a structural conflict of interest," the "any reasonable basis" test applied in early cases *"is no longer good law." Id.* at 673-674. Because HMC, in conjunction with Transamerica, determined Ms. Erickson's retirement benefit and pays the benefit, HMC operates under a structural conflict of interest. *See* AR 38. The Court considers the "inherent conflict that exists when a plan administrator both administers the plan and funds it." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 966-67 (9th Cir. 2006) (en banc)); *See Petrusich v. Unum Life Ins. Co. of Am.*, 984 F. Supp.2d 1112,1116 (D. Or. 2013) ("Even when a plan provides an unambiguous grant of discretion to the administrator, a heightened standard may be required because of the administrator's conflict of interest.").  The Court determines the extent to which the structural conflict "influenced the [] decision and discount to that extent the deference we accord the [] decision." *Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863, 868 (9th Cir. 2008).

"The court must consider numerous case-specific factors . . . and reach a decision as to whether discretion has been abused by weighing and balancing those factors together." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009) (citing *Metro. Life Ins. Co. v.*

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

*Glenn*, 128 S. Ct. 2343, 2351-52 (2008)).  The court **may weigh a conflict more heavily if the administrator fails to adequately investigate a claim, fails to credit a claimant's reliable evidence, repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.**  *Abatie,* 458 F.3d at 968-69 (internal citations omitted) (emphasis added).

The Court's review of defendants' adverse decision should also be heightened based upon the following factors — in addition to the structural conflict:

1.  Defendants breached their fiduciary duties under ERISA to maintain accurate, complete records of Ms. Erickson's hours and wages, which are necessary to determine the accuracy of the calculations at issue.  *See* Sec. B(1)(a)-(c), B(2), B(3), pp 12-22, *infra*.

2.  Defendants failed to accurately apply Plan provisions in their determination of Ms. Erickson's retirement benefit, in violation of their fiduciary duties, ERISA's "full and fair" review regulation, 29 C.F.R. § 2560.503-1(b)(5), and the Plan itself.  *See* Sec. B(1)(b), B(2), pp 14-16, 18-20, *infra*.

3.  Transamerica had a ***disincentive*** under its Pension Services Agreement with HMC to correct errors that result in an ***underpayment*** to Plan participants because Transamerica covers the costs of such errors. AR 1239. (Section VI, Float Income Policy and Error Correction Policy) ("Transamerica may receive gains from the adjustment of Plan transaction errors (error correction gains). Transamerica's policy is to put the plan in the position that it would have been in, but for the error; and fund any loss attributable to Transamerica's error or keep any gain associated with making the correction."). On the other hand, Transamerica had an ***incentive*** to search for mistakes by HMC, correction of which would ***decrease*** the Plan participant's benefit because Transamerica "retains any

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

gains that result from a processing adjustment, including gains earned by Transamerica

for correcting an error for which the Employer or a third party is responsible."). *Id*. ("Part

II.  Error Correction Policy"). *See* pp. 4-5, *supra*.

4.  Contrary to the express terms of Section 8.3 of the Plan (AR 69), defendants did not

    maintain claim procedures with safeguards to ensure that Ms. Erickson's retirement

    benefit determinations were made in accordance with Plan provisions. They failed to

    obtain and preserve accurate records necessary to correctly determine and confirm the

    calculation of Ms. Erickson's retirement benefit. As a result, the determination of Ms.

    Erickson's retirement benefit was plainly erroneous and arbitrary. This was also in

    violation of ERISA's "full and fair" review regulation, which required the Plan to

    "establish and maintain reasonable claims procedures" that "**contain administrative**

    **processes and safeguards designed to ensure and to verify that benefit claim**

    **determinations are made in accordance with governing plan documents** and that,

    where appropriate, the plan provisions have been applied consistently with respect to

    similarly situated claimants."  29 C.F.R. § 2560.503-1(b)(5).

**B.  HMC Arbitrarily Calculated Ms. Erickson's Retirement Benefit Under the Frozen Plan.**

HMC's June 29, 2020, estimate of Ms. Erickson's Frozen Plan retirement benefit,

calculated at the time of her retirement, shows the values HMC used in its determination of Ms.

Erickson's initial benefit. AR 237. The formula, with the values HMC used in applying it, is

reproduced below. The components that HMC calculated incorrectly are bolded in the "HMC"

column. The column headed "Corrected" provides the accurate values and the calculation of Ms.

Erickson's benefit when HMC's errors are corrected:

**PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT** -  Page 8 of 26

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

| # | Item | HMC | Corrected |
|---|------|-----|-----------|
| 1 | **Years of Benefit Service** | **21** | **24** |
| 2 | **Average Monthly Compensation** | **$5,718.29** | **$5,962.98** |
| 3* | Covered Compensation | $6,902.00 | $6,902.00 |
| 4 | Monthly Accrued Benefit Part A<br>(1) x 1.00% x (2) | $1,200.84 | **$1,431.12** |
| 5* | Monthly Accrued Benefit Part B<br>(1) x 0.50% x MAX {(2)-(3), 0} | $0.00 | $0.00 |
| 6 | **Monthly Accrued Benefit Part C<br>Rolled up 1987 Accrued Benefit[1]** | **$20.80** | **$24.40** |
| 7 | Monthly Accrued Benefit<br>(4) + (5) + (6) | $1,221.64 | **$1,455.52** |
| 8 | Late Retirement Factor | 1.152880 | 1.152880 |
| 9 | Vesting Percent | 100% | 100% |
| 10 | Benefit at Commencement Date<br>(7) x (8) x (9) | $1,408.40 | **$1,678.04** |
| * | Optional Form Factor (0.978536) | $1,378.17 | $1,642.02 |

\* Item not in dispute

HMC's errors are described in sections 1-3, below.

> **1. HMC arbitrarily failed to credit Ms. Erickson with three Years of Benefit Service.**

HMC credited Ms. Erickson with 21 years of Benefit Service in its calculation of her Frozen Plan retirement benefit. That was based upon HMC's determination that she worked, or was credited with, 1,000 Hours of Benefit Service for 21 years in the period January 1, 1988 through August 31, 2012, when the Frozen Plan ended. AR 237.[2]  The 21 years that HMC credited fell as follows: 1988-1995 (8 years credited), 1996-1997 (0 years credited), 1998-1999 (2 years credited), 2000-2001 (0 years credited), 2002-2012 (11 years credited).  *See Id.*

As a Frozen Plan participant, Ms. Erickson was entitled to receive one year of Benefit Service "for each Plan Year after commencing participation in which [she] has 1,000 or more

---

[1] As shown below, HMC also miscalculated Ericks's 1987 salary. *See* pp. 20-23, *infra.*

[2] Ms. Erickson became a participant in the Frozen Plan effective November 1, 1987. AR 1052; *See* AR 27 (Section 2.2).

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

Hours of Service as a Participant" up to December 31, 2012.  AR 31 (Section 4.1(A)(1)).[3]  An

"Hour of Service" is defined as:

> Each hour for which an Employee is directly or indirectly paid or entitled to
> payment by an Employer for performance of duties during a Plan Year…and each
> hour during a Plan Year for which an Employee is directly or indirectly paid or
> entitled to payment on account of a period of time during which no duties are
> performed. . .because of vacation, holiday, illness, incapacity (including
> disability), layoff, jury duty, military, or leave of absence.
>
> ...an Employee is not required to be credited on account of a period during which
> no duties are performed with a number of Hours of Service that is greater than the
> number of hours regularly scheduled for the performance of duties during such
> period.

AR 22 (Section 1.18).  HMC arbitrarily failed to credit Ms. Erickson with a Year of

Benefit Service for three years: **1996, 2000, and 2001**.  AR 438.  HMC's errors resulted

from its arbitrary failure to credit Ms. Erickson with low census hours and from its failure

to keep adequate records.

 Low census hours occurred when the Hospital released nurses from regularly

scheduled hours through voluntary or mandatory time off because their services were not

needed for patient care because of a low patient census. AR 123.  Nurses were not paid

during the time they were off work during low census hours; however, **their low census**

**hours counted as "Hours of Service," up to a maximum of 208 hours per year**. The

Summary Plan Description ("SPD") describes this:

> **You also receive Hours of Service for time off without pay due to low census**.
> You may receive such Hours of Service for no more than 208 hours within a Plan
> Year.  Subject to the 208-hour maximum, **for each mandatory day off, you will
> be credited with the Hours of Service you would have received for that day
> had you not had a mandatory day off**.

---

[3] A "Plan Year" is defined as "[t]he 12-consecutive-month period beginning each January 1 and
ending each December 31. . ."  AR 25 (Section 1.26).

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

*Id.*  (Section 3(A)) (emphasis added).

HMC documents confirm that HMC failed to credit Ms. Erickson with low census hours.

*See* pp. 13-18, *infra*.  They are consistent with Ms. Erickson's confirmation that she **consistently**

**and frequently** volunteered to take low census hours throughout her 34 years of employment at

the Hospital:

> My volunteering to take low census hours for the period 1993 through 2001 was
> consistent with my volunteering to take low census hours for the period 2002
> through 2020.

Affidavit of Maritta Erickson ¶4.

For each of the three years at issue — 1996, 2000 and 2001 — HMC's arbitrary failure to

credit Ms. Erickson for low census hours and/or keep adequate records resulted in its failure to

credit Ms. Erickson a Year of Benefit Service.  That was arbitrary, an abuse of HMC's discretion

and a breach of its fiduciary duty.

### a.  HMC failed to credit Ms. Erickson with a Year of Benefit Service for 1996.

HMC credited Ms. Erickson with 959.71 Hours of Service for 1996: 882.21 regular

scheduled hours and 77.5 overtime hours. AR 266, 323-26. HMC should have credited her with

1,158.71 hours. Because HMC credited less than 1,000 hours (*see* p. 9-10, *supra,* and AR 31),

Ms. Erickson was not credited with a Year of Benefit Service. *See* AR 266.  That was arbitrary.

HMC's "Personnel Action Forms" (AR 422, 1013) confirm that Ms. Erickson held a

scheduled 54-hour position from January 1, 1996 through July 10, 1996, and a scheduled

36-hour position from July 11, 1996 through December 31, 1996. AR 422, 1013. HMC's hourly

documentation of Ms. Erickson's time for 1996 shows the regular scheduled hours she worked,

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

the overtime hours she worked, the hours she took paid leave, the hours she took vacation, the
hours she attended continuing education, and nine low census hours. AR 323-26.

The following table shows, by pay period in 1996, the difference between HMC's record
of Ms. Erickson's credited regular scheduled Hours of Service, her missing and unaccounted
regular scheduled Hours of Service, and the regular scheduled Hours of Service she should have
been credited with:

| Pay Period | Credited Regular Scheduled Hours of Service by HMC | Missing and Unaccounted Regular Scheduled Hours | Regular Scheduled Hours of Service that Should Have Been Credited by HMC |
|---|---|---|---|
| 1 | 18 | 36 | 54 |
| 2 | 36 | 18 | 54 |
| 3 | 36 | 18 | 54 |
| 4 | 36 | 18 | 54 |
| 5 | 36 | 18 | 54 |
| 6 | 36 | 18 | 54 |
| 7 | 36 | 18 | 54 |
| 8 | 36 | 18 | 54 |
| 9 | 27 | 27 | 54 |
| 10 | 36 (includes 9 low census hours) | 18 | 54 |
| 11 | 36 | 18 | 54 |
| 12 | 40 | 14 | 54 |
| 13 | 54 | 0 | 54 |
| 14 | 54 | 0 | 54 |
| 15 | 35.46 | 6.97 | 42.43[4] |
| 16 | (no hours listed) | 36 | 36 |
| 17 | (no hours listed) | 36 | 36 |
| 18 | 36.5 | 0 | 36 |
| 19 | 41.25 | 0 | 36 |
| 20 | 36 | 0 | 36 |
| 21 | 36 | 0 | 36 |
| 22 | 36 | 0 | 36 |
| 23 | 36 | 0 | 36 |
| 24 | 36 | 0 | 36 |

---

[4] Ms. Erickson's change from 54 to 36 regular scheduled hours was on July 11, during this pay
period.

**PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT** - Page 12 of 26

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

| 25 | 27 | 9 | 36 |
|---|---|---|---|
| 26 | 45 | 0 | 36 |
| **Total hours** | **882.21** | **326.97** | |

*See* AR 323-26.

The discrepancy reflects that HMC arbitrarily failed to credit Ms. Erickson with Hours of Service for 326.97 hours as shown in the third column ("Missing and Unaccounted Regular Hours").

Those 326.97 hours were "low census" hours—the time Ms. Erickson was scheduled to work, but either volunteered to go home or was sent home without pay because of a low patient census in the hospital.  AR 280-88.  Those 326.97 hours cannot be anything else because there is no other category to account for them. They were scheduled hours where Ms. Erickson showed up for work at the appointed time and date but left at the hospital's request because of the hospital's low patient census.

Ms. Erickson must be credited for those hours according to the terms of the Frozen Plan. The Plan limits the number of low census hours that are credited to 208 per Plan year. AR 123. Accordingly, HMC must credit Ms. Erickson with an additional 199 low census hours (in addition to the 9 it credited), for a total of 208 low census hours credited for 1996.  When 199 low census hours are added to HMC's 959.71 credited hours (regular plus overtime), Ms. Erickson's total credited hours for 1996 are 1,158.71. This meets the 1,000 Hours of Service needed to qualify 1996 as an additional Year of Benefit Service in the calculation of Ms. Erickson's Frozen Plan retirement benefit. AR 31, 237.

There is a second reason 1996 qualifies as a Year of Benefit Service.  The Plan states that Ms. Erickson receives 190 Hours of Service for each month that HMC did not keep records of

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** -  Page 13 of 26

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

her service, provided she was required to be credited with at least one Hour of Service for the

month. AR 23 (Section 1.18). HMC did not keep records of Ms. Erickson's service for pay

periods #16 or #17 for 1996. AR 325.  According to Section 1.18, Ms. Erickson is therefore

credited with 190 Hours of Service for both July and August 1996 (the months covered by pay

periods #16 and #17 – which are months Ms. Erickson was credited with at least one Hour of

Service. *See* AR 751. Her total is therefore 380 hours for those months.  HMC only credited

136.46 hours for July and August (AR 325, 751), for a difference of 243.54 hours, which must be

added to HMC's total hours calculation of 959.71 hours, for a total of 1,203.25 Hours of Credited

Service for 1996, which qualifies as a Year of Benefit Service for Ms. Erickson.

For both of the above reasons, HMC's omission of 1996 as a Year of Benefit Service was

erroneous and arbitrary.  AR 438.

### b.  HMC failed to credit Ms. Erickson with a Year of Benefit Service for 2000.

Ms. Erickson held a 36-hour scheduled position per pay period from January 1, 2000

through December 31, 2000. AR 990, 994.  Again, Ms. Erickson had to have 1,000 Hours of

Benefit Service in 2000 in order for 2000 to count as a Year of Benefit Service.  *See* AR 31.

HMC credited Ms. Erickson with 934.25 Hours of Benefit Service. AR 266.  *See* 337-340

(HMC's documentation of Ms. Erickson's credited Hours of Service for 2000).  HMC arbitrarily

failed to credit her with a Year of Benefit Service. *See* AR 267.

The following table shows, by pay period in 1996, the difference between HMC's record

of Ms. Erickson's credited regular scheduled Hours of Service, her missing and unaccounted

regular scheduled Hours of Service, and the regular scheduled Hours of Service she should have

been credited with:

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT** -  Page 14 of 26

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

| Pay Period | Credited Regular Scheduled Hours of Service by HMC | Missing and Unaccounted Regular Scheduled Hours | Regular Scheduled Hours of Service that Should Have Been Credited by HMC |
|---|---|---|---|
| 1 | 27 | 9 | 36 |
| 2 | 36 | 0 | 36 |
| 3 | 36 | 0 | 36 |
| 4 | 36 | 0 | 36 |
| 5 | 36 | 0 | 36 |
| 6 | 36 | 0 | 36 |
| 7 | 36 | 0 | 36 |
| 8 | 27 | 9 | 36 |
| 9 | 27 | 9 | 36 |
| 10 | 27 | 9 | 36 |
| 11 | 27 | 9 | 36 |
| 12 | 27 | 9 | 36 |
| 13 | 27 | 9 | 36 |
| 14 | 27 | 9 | 36 |
| 15 | 27 | 9 | 36 |
| 16 | 18 | 18 | 36 |
| 17 | 18 | 18 | 36 |
| 18 | 27 | 9 | 36 |
| 19 | 27 | 9 | 36 |
| 20 | 27 | 9 | 36 |
| 21 | 27 | 9 | 36 |
| 22 | 27 | 9 | 36 |
| 23 | 27 | 9 | 36 |
| 24 | 27 | 9 | 36 |
| 25 | 27 | 9 | 36 |
| 26 | 27 | 9 | 36 |
| **Total hours** | **738** | **198** | |

*See* AR 337-40.

In addition to the 738 hours of credited regular scheduled hours, HMC also credited Ms. Erickson with 196.25 hours of overtime in 2000 (*id.*), for total credited hours of 934.25. AR 266.

HMC did not credit Ms. Erickson with any "low census" hours in 2000 (AR 337-340), even though Ms. Erickson had many low census days during 2000. AR 280-88.

**PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT** - Page 15 of 26

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

HMC did not credit Ms. Erickson with any Hours of Service for the 198 hours in the third column ("Missing and Unaccounted Regular Hours") needed to total her 36 scheduled hours position/pay period. These are the hours HMC failed to document and that should be credited to Ms. Erickson as low census hours. AR 280-88.  When the 198 "low census" Hours of Service are added to HMC's 934.25 credited hours, the total is 1,132.25 hours, which meets the 1,000 Hours of Service needed to qualify 2000 as an additional Year of Benefit Service in calculating Ms. Erickson's Frozen Plan retirement benefit.  AR 31, 237.  HMC's omission of 2000 as a Year of Benefit Service was erroneous and arbitrary. AR 438.

### c.  HMC failed to credit Ms. Erickson with a Year of Benefit Service for 2001.

HMC credited Ms. Erickson with 749.50 Hours of Service in 2001.  AR 277.  Because that was less than 1,000 hours, HMC did not credit her with a Year of Benefit Service for 2001. AR 267.

HMC's documentation of Ms. Erickson's credited Hours of Service for 2001 are located at AR 340-43. Ms. Erickson had a 36-hour regular scheduled  position from January 1, 2001 through November 18, 2001 and a 40 hour regular scheduled position from November 19 through December 31, 2001.  AR 990, 984.  The following table shows, by pay period in 2001, the difference between HMC's record of Ms. Erickson's credited regular scheduled Hours of Service, her missing and unaccounted regular scheduled Hours of Service, and the regular scheduled Hours of Service she should have been credited with:

/ /

/ /

/ /

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT** -  Page 16 of 26

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

| Pay Period | Credited Regular Scheduled Hours of Service by HMC | Missing and Unaccounted Regular Scheduled Hours | Regular Scheduled Hours of Service that Should Have Been Credited by HMC |
|---|---|---|---|
| 1 | 27 | 9 | 36 |
| 2 | 18 | 18 | 36 |
| 3 | 27 | 9 | 36 |
| 4 | 30.25 | 5.75 | 36 |
| 5 | 27 | 9 | 36 |
| 6 | 28.25 | 7.75 | 36 |
| 7 | 27 | 9 | 36 |
| 8 | 27 | 9 | 36 |
| 9 | 27 | 9 | 36 |
| 10 | 27 | 9 | 36 |
| 11 | 27 | 9 | 36 |
| 12 | 27 | 9 | 36 |
| 13 | 27 | 9 | 36 |
| 14 | 27 | 9 | 36 |
| 15 | 27 | 9 | 36 |
| 16 | 29.25 | 6.75 | 36 |
| 17 | missing | 36 | 36 |
| 18 | 18 | 18 | 36 |
| 19 | 27 | 9 | 36 |
| 20 | 27 | 9 | 36 |
| 21 | 27 | 9 | 36 |
| 22 | 27 | 9 | 36 |
| 23 | 27 | 9 | 36 |
| 24 | 10 | 26 | 36 |
| 25 | 40 | 0 | 40 |
| 26 | 39.5 | 0.5 | 40 |
| **Total hours** | **672.25** | **271.75** | |

*See* AR 340-43.

In addition to 672.25 hours of credited regular scheduled hours, HMC also credited Ms. Erickson with 77.25 hours of overtime in 2001, for a total of 749.50 credited hours in 2001. AR 266.

HMC did not credit Ms. Erickson with any "low census" hours in 2001 (AR 340-43) despite her recollection of having many "low census" days during 2001. AR 280-88.

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** - Page 17 of 26

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

HMC did not credit Ms. Erickson with any Hours of Service for the 271.75 hours, shown in the third column above ("Missing and Unaccounted Regular Hours"), needed to total her 36 and 40 regular scheduled hours position/pay period. These are the hours that HMC failed to document and that should be credited to Ms. Erickson as "low census" hours (limited to 208 hours per Plan year). The 208 "low census" Hours of Service added to HMC's 749.5 credited hours totals 957.5 hours.

Ms. Erickson is to receive 190 Hours of Service for each month that HMC did not keep records of her service, provided she was required to be credited with at least one Hour of Service for the month. *See* pp. 13-14, *supra*. HMC did not keep records of Ms. Erickson's hours of service for pay period #17, which falls in the month of August. AR 342. Ms. Erickson was credited with at least one Hour of Service in August 2001 (AR 744) and therefore must be credited with 190 Hours of Service for August 2001. Even after subtracting all the hours earned in pay periods #18 and #19 (a total of 46.5 hours, AR 342) to avoid counting August hours twice, Ms. Erickson would be credited with an additional 143.5 hours. Adding the additional 143.5 hours for August to HMC's 749.5 credited hours plus the 208 "low census" hours totals 1101 hours (749.5 + 208 + 143.5 = 1101) and qualifies 2001 as a Year of Benefit Service. HMC's omission of 2001 as a Year of Benefit Service was erroneous. AR 438.

Accordingly, Ms. Erickson's total Years of Benefit Service are 24.0: The 21.0 years acknowledged by HMC + 3 additional years (1996, 2000, and 2001). AR 237.

## 2. HMC arbitrarily computed Ms. Erickson's Average Monthly Compensation.

HMC arbitrarily computed Ms. Erickson's Average Monthly Compensation (called Average Monthly Earnings in the Plan - AR 20) to be $5,718.29 instead of $5,962.98, which is the accurate figure. *See* AR 237 and p. 9, *supra* (Item #2). HMC's error results from its use of

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

Ms. Erickson's annual salary for the years **2007 through 2011** to compute her Average Monthly

Compensation/Average Monthly Earnings. Under the Plan, HMC was required to use Ms.

Erickson's salary from **2008 through August 31, 2012** for that computation because it generates

a larger benefit.

The Frozen Plan defines "Monthly Earnings"[5] as:

Annual Earnings divided by 12, except that **for <u>any short Plan Year,</u>[6] Monthly Earnings are the Annual Earnings during that short Plan Year divided by the number of full calendar months in that short Plan Year**.  (emphasis added)

AR 24 (Section 1.22).

"Highest Average Earnings" are defined in relevant part, as:

Average Monthly Earnings during the five consecutive Plan Years during which the Participant's Annual Earnings are the highest, **<u>subject to the following provisions:</u>**
    (A) Monthly Earnings for periods before the 1988 Plan Year shall not be used in calculating Highest Average Earnings. . .
                                            ***
     (D) **A Participant's Highest Average Earnings will be calculated using Compensation paid through August 31, 2012, or December 31, 2011, whichever would generate the larger benefit.**

AR 20-21 (Section 1.16) (emphasis added).

Under the Plans's retirement benefit formula, Ms. Erickson receives 1% of her

highest average earnings for each Year of Benefit Service after December 31, 1987, in the

calculation of her Frozen Plan retirement benefit. AR 38.

6.2 **<u>Normal Retirement Benefit.</u>**  Upon retirement at normal retirement date, a Participant is entitled to receive a monthly benefit payable for life. . .in an amount equal to the sum of (A), (B), (C), and (D) as follows:

---

[5] Defendants' benefit estimate (AR 237) uses the terms "Average Monthly Compensation" whereas the Plan Term is "Average Monthly Earnings." AR 20.
[6] The Frozen Plan **does not define a "short** Plan Year."

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

(A) For each year of Benefit Service after December 31, 1987, 1 percent of the Participant's Highest Average Earnings.

*Id.*

Ms. Erickson's salary from 2008 through August 31, 2012 was: $75,853.95 (2008) + $76.352.54 (2009) + $72,464.92 (2010) + $76,041.58 (2011) + $33,213.96 = $333,926.95; $333,926.95/56 months (the number of "full calendar months" from January 1, 2008 through August 31, 2012) = **$5,962.98**. AR 20-21, 1056.

HMC's calculation, using the years 2007 through 2001, was: $42,384.28 (2007) + $75,853.95 (2008) + $76.352.54 (2009) + $72,464.92 (2010) + $76,041.58 (2011) = $300,712.99; $300,712.99/60 months = **$5,718.29**. *See* AR 237. AR 1056.

Ms. Erickson's Average Monthly Compensation/Average Monthly Earnings used in the Plan's retirement benefit formula must be increased by $244.69, the difference between these amounts ($5,962.98 - $5,718.29). *See* p. 9, *supra* ("Corrected" Item #2).

**3.    HMC arbitrarily computed Ms. Erickson's Monthly Accrued Benefit Part C.**

The third value HMC got wrong is Ms. Erickson's Monthly Accrued Benefit Part C, referred to on the Estimate Detail as "Rolled up 1987 Accrued Benefit." AR 238. *See* p. 9, *supra* (Item #6).

In 1987, Ms. Erickson had a partial year of Benefit Service (after becoming a participant in the Plan on November 1st), from November 1, 1987 through December 31, 1987. *See* AR 1052. Section 6.2 (C) of the Frozen Plan ("Normal Retirement Benefit") states how that partial year of Benefit Service is factored into her monthly retirement benefit:

Upon retirement at normal retirement date, a Participant is entitled to receive a monthly benefit payable for life (adjusted to its Actuarial Equivalent pursuant to 6.5, if applicable) in an amount equal to the sum of (A), (B), (C), and (D) as follows:

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

(A) For each year of Benefit Service after December 31, 1987, 1 percent of the Participant's Highest Average Earnings.
(B) [not applicable]
**(C) For each year or partial year of Benefit Service after February 28, 1975, and before January 1, 1988, 1 percent of the Participant's Monthly Earnings[7] during each Plan Year.[8]**
(D) [not applicable]

AR 38-39 (emphasis added). Because Ms. Erickson had a partial year of Benefit Service in 1987, 6.2(C) applies. Therefore, one percent (1%) of Ms. Erickson's Monthly Earnings during calendar year 1987 is her rolled up 1987 accrued benefit.

HMC arbitrarily used $24,957 as Ms. Erickson's annual salary for 1987 to determine her 1987 Accrued Benefit. AR 1056.[9] AR 237, 1056. HMC's payroll records show a total of $22,322.69 for pay periods #5 through #26. However, the records for pay periods #1 through #4 are missing. *See* AR 762-63. HMC had a duty under the Plan (AR 70) and a fiduciary duty under ERISA to maintain complete, accurate records necessary to determine Ms. Erickson's retirement benefits. *See* pp. 8-9, *supra* (quoting 29 C.F.R. § 2560.503-1(b)(5)).

Ms. Erickson's 1987 Social Security Statement shows that her taxed earnings in 1987 were $29,277. Erickson Affidavit, Ex. B. She confirms that all of her compensation and wages in 1987 were from HMC. *Id*.,

HMC's record provides no documentation or explanation of the discrepancy between the $24,957 used by HMC in determining Ms. Erickson's 1987 Accrued Benefit and the $29,277 reported on Ms. Erickson's Social Security Statement.

---

[7] "Monthly Earnings" are "Annual Earnings divided by 12," (except in a short Plan Year, which is not applicable for 1987). AR 24 (Section 1.22). *See* p. 19, *supra*.
[8] The 1987 Plan year was from January 1- December 31. *See* AR 25.
[9] In its initial calculation of Erickson's 1987 Accrued Benefit, HMC incorrectly used 1% of her annual salary ($24,957/.01 = $249.57) instead of 1% of her monthly earnings ($24,957/12 = $2,079.75; $2,079.75 x .01 = $20.80), as her 1987 Accrued Benefit. AR 237. This error was discovered by Transamerica's audit in April 2021 and corrected effective May 1, 2021. AR 191.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

Ms. Erickson's 1987 Social Security compensation is the most complete and accurate account of her 1987 salary and therefore should be used to calculate her 1987 Accrued Benefit, resulting in a 1987 Accrued Benefit of $24.40: $29,277/12 = $2,439.75; $2,439.75 x .01 = $24.40.

### 4. After correcting defendants' errors, Ms. Erickson's monthly retirement benefit amount is $1,642.02.

The Benefit at Commencement is the product of the Monthly Accrued Benefit (which is the sum of Parts A, B, and C) times (x) the Late Retirement Factor times (x) the Vesting Percentage (AR 187)). The Benefit at Commencement is then multiplied by an Optional Form Factor, which is 0.978536 in this case. That calculation is as follows:

i. Monthly Accrued Benefit, Part A = Years of Benefit Service x 1.00% x Average Monthly Compensation: **24 years x 1.00% x $5,962.98 = $1,431.12**

ii. Monthly Accrued Benefit Part B = Monthly Accrued Benefit Part A × the greater of Zero or the Covered Compensation less Average Monthly Compensation ($6,902 × 0 = 0)

iii. Monthly Accrued Benefit Part C = 1987 Salary ÷ 12 = average monthly salary; monthly salary × 1%: **[$29,277.00 ÷ 12] × 1% = $24.40**

iv. Monthly Accrued Benefit = Monthly Accrued Benefit Part A + Monthly Accrued Benefit Part B + Monthly Accrued Benefit Part C: **$1,431.12 + 0 + $24.40 = $1,455.52**

**v.** Benefit at Commencement Date = Monthly Accrued Benefit × Late Retirement Factor × Vesting Percentage: **$1,455.52 × 1.152880 × 100% = $1,678.04**

The below table displays the application of the benefit formula vertically and shows the erroneous values used by HMC compared to the correct values based upon the Plan and record:

/ /

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - Page 22 of 26

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

| # | Item | HMC | Corrected |
|---|------|-----|-----------|
| 1 | **Years of Benefit Service** | 21 | **24** |
| 2 | **Average Monthly Compensation** | $5,718.29 | **$5,962.98** |
| 3* | Covered Compensation | $6,902.00 | **$6,902.00** |
| 4 | Monthly Accrued Benefit Part A (1) x 1.00% x (2) | $1,200.84 | **$1,431.12** |
| 5* | Monthly Accrued Benefit Part B (1) x 0.50% x MAX {(2 )- (3), 0} | $0.00 | **$0.00** |
| 6 | **Monthly Accrued Benefit Part C Rolled up 1987 Accrued Benefit** | $20.80 | **$24.40** |
| 7 | Monthly Accrued Benefit (4) + (5) + (6) | $1,221.64 | **$1,455.52** |
| 8 | Late Retirement Factor | 1.152880 | **1.152880** |
| 9 | Vesting Percent | 100% | **100%** |
| 10 | Benefit at Commencement Date (7) x (8) x (9) | $1,408.40 | **$1,678.04** |
| * | Optional Form Factor (0.978536) | $1,378.17 | $1,642.02 |

*See* pp. 8-9, *supra*, and AR 237.

**C. Defendants Should Be Ordered to Correct Ms. Erickson's Retirement Benefit and to Pay the Correct Benefit Amount Retroactively to July 1, 2020.**

Defendants abused their discretion in their determination of three components of Ms. Erickson's Frozen Plan Retirement. They failed to credit her with three Years of Benefit Service, failed to follow the Frozen Plan's provisions in calculating her Average Monthly Compensation, and failed to maintain adequate records of Erickson's 1987 earnings, which resulted in a shortfall in her 1987 Accrued Benefit. Defendants' abuse of discretion stemmed from their failure to maintain adequate records and their erroneous application of plan terms.

Defendants failed to maintain the following records, which were necessary for an accurate determination of Ms. Erickson's retirement benefit:

- Hourly records by pay period that account for all of Ms. Erickson's regular scheduled hours for 1996, 2000, and 2001. *See* pp. 9-18, *supra* (Years of Benefit Service errors).

- Hourly records for pay periods #16 and #17 in 1996. *See* p. 14, *supra*.

- Hourly records for pay period #17 in 2001.  *See* p. 18, *supra*.

- Payroll earnings for pay periods #1 through #4 in 1987.  *See* p. 21, *supra* (Monthly Accrued Benefit Part C error).

- There is a large, unexplained discrepancy of $4,321 between Ms. Erickson's payroll earnings documented by HMC for 1987 ($24,956.84) and her 1987 Social Security earnings ($29,277.84) – a year in which all of her earnings were from work performed for HMC.  *See* pp. 21-22, *supra*.

There are other examples of missing records that did not affect the calculation of Ms. Erickson's retirement benefit but that illustrate HMC's pervasive failure to maintain accurate, complete records that are necessary to accurately determine correct retirement benefits: Like defendants' 1996, 2000 and 2001 records, the pay period hourly records for 1993-1995 and 1998-1999 fail to account for all of Ms. Erickson's regular scheduled hours/pay period. *See* AR 315-23; 330-37. In addition, the payroll earnings for pay period #16 in 1992 are also missing. *See* AR 756.

Defendants also made mistakes simply by using the wrong numbers in calculating Ms. Erickson's retirement benefits. They used an erroneous annual value in the initial calculation of Erickson's Frozen Plan 1987 accrued benefit — a mistake caught by Transamerica in its April 2021 audit. *See* p. 4, *supra*, and AR 167. They also used the wrong closing cash balance and the wrong conversion factor in the initial calculation of Erickson's Cash Balance Plan, resulting in the underpayment of Ms. Erickson's retirement benefit by $13.28 per month. AR 188, 190, 1052. This was corrected in litigation in May 2023, after the issue was brought to defendants' attention by Ms. Erickson's counsel. *See* p. 5, *supra*.

HMC and Transamerica had numerous opportunities to accurately determine Erickson's Frozen Plan retirement benefit: (1) in making their initial benefit estimate of June 29, 2020 (AR 237); (2) in the review of Erickson's inquiry, treated as a formal claim, which HMC denied in

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

September 2020 (AR 277); (3) in the review of Erickson's appeal, which HMC denied in February 2021 (AR 437); (4) in Transamerica's April 2021 audit (AR 191); (5) in the review of Erickson's inquiry, treated as a formal claim, which HMC denied in May 2021 (AR 1180); (6) in the review of Erickson's appeal, which HMC denied in October 2021 (AR 244). Yet with the exceptions of the April 9, 2021 letter to Erickson following Transamerica's audit — which only asserted a mistake favorable to Transamerica and HMC — and defendants' acknowledgement in litigation of a mistake, defendants continue to assert that their determination of Ms. Erickson's retirement benefit was correct.

Defendants' failure to correctly determine Erickson's retirement benefit was due to their disregard of the Plan's provisions, failure to maintain accurate records and disregard of evidence. Ms. Erickson's correct benefit amount is established as $1,642.02. Defendants should be ordered to pay Ms. Erickson that amount in accordance with the Plan.  *See Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001) ("...a plan administrator will not get a second bite at the apple when its first decision was simply contrary to the facts."); *Robertson v. Standard Ins. Co.*, 139 F. Supp. 3d 1190, 1210 (D. Or. 2015) ("In cases where the plan administrator has abused its discretion when denying a claim for disability that was supported by the record, however, courts have ordered payment of benefits on the ground that the administrator should not be given a second chance.").

## VI. CONCLUSION

For all the above reasons, defendants abused their discretion in erroneously determining Ms. Erickson's Frozen Plan retirement benefit.  Ms. Erickson requests this Court enter summary judgment in her favor, declaring that $1,642.02 is her correct Frozen Plan monthly retirement benefit and ordering defendants to pay that that benefit amount effective July 1, 2020, the Benefit

**PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT** -  Page 25 of 26

Commencement Date, and continuing so long as benefits are payable under the Frozen Plan, and

to pay Ms. Erickson all back benefits she is owed from July 1, 2020 through the date of

Judgment, all contributions due or payable to Ms. Erickson due to defendants' errors and interest

on all arrears pursuant to 28 U.S.C. § 1961.

DATED this 26th day of May, 2023.

Respectfully submitted,

s/*John C. Shaw*
OSB No. 065086
Email*:* john@meganglor.com
s/*Megan E. Glor*
OSB No.930178
Email:  megan@meganglor.com

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400