Megan E. Glor, OSB No. 930178
Email: megan@meganglor.com
John C. Shaw, OSB No. 065086
Email: john@meganglor.com
Megan E. Glor, Attorneys at Law, P.C.
707 NE Knott Street, Suite 101
Portland, OR 97212
Telephone: (503) 223-7400
Facsimile: (503) 751-2071

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MARITTA ERICKSON,<br><br>               Plaintiff,<br><br>   v.<br><br>HILLSBORO MEDICAL CENTER and TRANSAMERICA RETIREMENT ADVISORS, LLC,<br><br>               Defendants. | Case No. 3:22-cv-01208-HZ<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

/ /

/ /

/ /

/ /

/ /

### I.  INTRODUCTION

Plaintiff has shown that Defendants Hillsboro Medical Center ("HMC") and Transamerica Retirement Advisors, LLC ("Transamerica") erred and abused their discretion in making their determinations of three values in the formula used to determine the amount of Ms. Erickson's monthly retirement pension benefit under the Tuality Healthcare Retirement Plan ("Frozen Plan"):

1. HMC credited Ms. Erickson for 21 "Years of Benefit Service", while she was entitled to be credited for 24 years. HMC arbitrarily denied Ms. Erickson a "Year of Benefit Service" for three years: 1996, 2000, and 2001.  HMC's error results from its failure to maintain complete and accurate records of Ms. Erickson's "Hours of Service" and from its failure to credit Ms. Erickson with all the "Hours of Service" she was entitled to for her "low census" hours–hours that she was scheduled to work, but either volunteered to go home or was sent home, without pay, because the hospital census was low and she was not needed for patient care. HMC's failures during each of the three years were arbitrary and disregarded the express terms of the Plan.  *See* Dkt. #31, pp. 9-18.

2. HMC arbitrarily computed Ms. Erickson's Average Monthly Compensation.  HMC used Ms. Erickson's annual salary for the years 2007 through 2011, rather than 2008 through August 31, 2012, for the computation.  The Frozen Plan expressly required defendants to use the latter time period because it generated a larger benefit.  *See Id.*, pp. 18-20.

3. HMC arbitrarily computed Ms. Erickson's Monthly Accrued Benefit Part C.  HMC used $24,957 as Ms. Erickson's annual salary for 1987 to determine her 1987 Accrued Benefit.  Ms. Erickson's 1987 Social Security earnings show that HMC's figure is incorrect: her 1987 taxed earnings were $29,277, and all of her compensation and wages in 1987 were

from HMC.  HMC failed to maintain records for pay periods #1 through #4 of 1987, in breach of its fiduciary duty, and therefore cannot account for the discrepancy.  Its determination was therefore arbitrary.  *See Id.*, pp. 20-22.

These three errors resulted in calculation errors in the benefit formula used by Defendants in determining Ms. Erickson's Frozen Plan retirement benefit and an underpayment of Ms. Erickson's monthly retirement benefit under the Frozen Plan.

Defendants address the first issue in their motions.  They erroneously argue that their determination of Ms. Erickson's "Years of Benefit Service" was not arbitrary and capricious and, therefore, that Ms. Erickson is not entitled to be credited for four additional years.  Dkt. #30, pp. 11-13.[1]  However, Defendants' determination was arbitrary and capricious because it failed to account for the missing regular scheduled hours that Ms. Erickson did not work; failed to credit all of her "low census" hours (up to 208 hours/year) as "Hours of Service"; and failed to follow the terms of the Plan for years 1996, 2000, and 2001.  *See* Dkt. # 31, pp. 9-18.

Defendants' motions also address a different aspect of their determination of Ms. Erickson's Monthly Accrued Benefit Part C than the one addressed in Ms. Erickson's motion (#3, above).  Defendants argue that Transamerica discovered through an audit that Ms. Erickson's Frozen Plan monthly benefit had been overpaid by $258.09 and therefore correctly reduced her monthly benefit effective May 1, 2021.  *Id.*, pp. 5-6 (Section D), 13 (Section C).  This error resulted from Transamerica's erroneous application of "[t]he portion of [Ms. Erickson's] Normal Retirement Benefit derived from [her] employment through December 31,

---

[1] Plaintiff initially believed that HMC had erroneously failed to credit her with a "Year of Benefit Service" for 1997, but did not pursue that claim in litigation.

PLAINTIFF'S RESPONSE - Page 3 of 16     Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

1987…as an annual value instead of a monthly value, causing [her] overall benefit to be overstated." AR 191.

Transamerica's error discovered in its audit is just one of numerous errors made by Defendants in their determination of Ms. Erickson's monthly retirement benefit. It is consistent with Defendants' errors and arbitrary determinations of three components of Ms. Erickson's monthly retirement benefit. *See* pp. 2-3, *supra*.

Tranamerica's argument that it is not a proper defendant is without merit. *See* Dkt. #34, pp. 2-3. Under its Pension Services Agreement with HMC, Transamerica served as HMC's recordkeeper, had fiduciary duties regarding retiree payment administration services, identified and corrected transaction processing errors, and therefore is a proper defendant under ERISA, 29 U.S.C. § 1002(21)(A), § 1132(a)(1)(B). *See* pp. 14-15, *infra*.

## II.    ARGUMENT

**A. Defendants Abused Their Discretion in Concluding that Ms. Erickson is Not Entitled to a "Year of Benefit Service" for 1996, 2000, and 2001.**

Ms. Erickson has shown that 1996, 2000, and 2001 must be counted as "Years of Benefit Service" in the calculation of her retirement benefit under the Frozen Plan and that HMC arbitrarily credited Ms. Erickson for 21 "Years of Benefit Service" instead of 24 years, resulting in Defendants' arbitrary computation of Plaintiff's monthly retirement benefit under the Plan:

- HMC failed to account for Ms. Erickson's "low census" hours – the regular scheduled hours that she did not work because the hospital patient census was low and she was not needed for patient care. *See* Dkt. #31, p. 10.

- HMC provided no alternative explanation ( in lieu of "low census" hours) to account for her regular scheduled hours she did not work. *See Id*., p. 11.

- HMC failed to credit her scheduled, but unworked "low census" hours (up to a maximum of 208 hours/year), to her yearly totals in 1996, 2000, and 2001, which resulted in those years not being counted as "Years of Benefit Service". *See Id.*, p. 10.

- HMC relied on its incomplete payroll and hourly records in its erroneous determination that 1996, 2000, and 2001 did not qualify as "Years of Benefit Service" in the Frozen Plan retirement benefit formula. *See Id.*, p. 11.

- HMC provided no explanation for the disparity between the "low census" hours she was credited with between 1993-2002 and between 2002-2020, even though her volunteering to take "low census" hours was consistent throughout the two time periods and did not dramatically increase beginning in 2002. *See Id.*, p.11.

*See* Dkt. #31, pp. 9-18.[2]

Defendants argue that "there is nothing in the Administrative Record that supports [Ms. Erickson's] contentions that she surpassed 1,000 hours in any of the four years[3] in question." *Id.*, p. 2. They assert that while Ms. Erickson "may disagree with the ultimate outcome, [she] cannot establish that HMC's actions or decisions amount to 'arbitrary or capricious' conduct which is required for her to prevail on her claims." Dkt. #30, pp. 7.[4] They assert that "HMC's determination in this case was founded upon its payroll records and consideration of the factors that Erickson had identified" and that "[i]t cannot be said that HMC's procedure or ultimate decision was arbitrary or capricious..." and that according to the record, Ms. "Erickson's memory

---

[2] This error is reflected in Item #1 ("Years of Benefit Service") of the table at Dkt. #31, p. 9.
[3] Plaintiff initially believed HMC had erroneously failed to credit her with a Year of Benefit Service for 1997, but did not pursue that claim in litigation.
[4] Plaintiff's Response cites HMC's Motion for Summary Judgment, which Transamerica joins and incorporates by reference (Dkt. #34, p. 2), except in Section II(B), pp. 14-15, *infra*, addressing Transamerica's argument that it is not a proper defendant.

of events that occurred over two decades ago is not reliable." *Id*., at p. 12; *See Id*., at pp. 11-13. However, the record regarding HMC's crediting of Ms. Erickson's "low census" hours shows that Ms. Erickson's memory is correct; that HMC's records are incomplete; and that HMC's methodology for determining Ms. Erickson's "Years of Benefit Service" is arbitrary.

> **1. Defendants have failed to maintain complete, accurate records necessary to show that their determination of Ms. Erickson's "Years of Benefit Service" is correct.**

The payroll and hourly records upon which HMC relies are incomplete. HMC's **payroll** records consist of screenshots that identify the year, pay period, pay date, check number, earnings, and deductions and net pay, organized into columns. AR 718-63. The payroll records document Ms. Erickson's earnings – the money she was paid for the hours that she worked. AR 718-63. They do not show a breakdown of Ms. Erickson's regular scheduled hours for each pay period she worked, or did not work (her "low census" hours), which is the information needed to determine whether or not she was credited with the required 1,000 "Hours of Service" for the year to qualify it as a "Year of Benefit Service." *Id.* Dkt. #31, pp. 9-18. Glaringly absent is a record of all her "low census" hours (for 1996, 2000, and 2001) – her regular scheduled hours that she did not work because she was sent home or voluntarily left work due to a low patient count.

HMC's **hourly** records are also incomplete. *See* AR 323-26, 337-43. They do not account for all of Ms. Erickson's regular scheduled hours per pay period and they show that HMC failed to credit Ms. Erickson with the vast majority of her "low census" hours for 1996, 2000, and 2001. *See* Dkt. #31, pp. 9-17. They do show the number of **regular scheduled hours** she worked, the **overtime hours** she worked, the hours she took **paid leave**, her **vacation** hours, the hours she **attended continuing education**, and **some** **"low census" hours**. *See Id*. and AR

323-326 (1996), 337-340 (2000), 340-343 (2001).  However, they do not account for the 326.97 hours in 1996, the 198 hours in 2000, and the 271.75 hours in 2001 that Ms. Erickson was regularly scheduled to work, but didn't.  *See* Dkt. 31, pp. 11-14 (1996), 14-16 (2000), 16-18 (2001).  Those are her "low census" hours.  There is no other explanation in the Administration Record for the large gaps between the number of her regular scheduled hours and the number of credited regular scheduled "Hours of Service" by HMC, as shown in the tables on pages 12-13, 15, and 17 of Plaintiff's motion.

HMC asserts that Ms. Erickson "recognized when she was hired that her "work schedule, the number of shifts and hours per week and the number of hours per shift may vary with the patient census and scheduling demands of the hospital[,]" and therefore her budgeted hours may not reflect her actual hours worked."  Dkt. #30, p.13 (citing AR 1045 (new hire documentation, stating that Ms. Erickson's "work schedule, the number of shifts and hours per week and the number of hours per shift may vary with the patient census and scheduling demands of the hospital.").  However, HMC misses the point.

The issue is not that Ms. Erickson's scheduled/budgeted hours "may not reflect her actual hours worked"–the issue is that HMC failed to credit Ms. Erickson with her entitled "Hours of Service" for the scheduled/budgeted hours that she did not work.  In those pay periods that Ms. Erickson did not **work** all of her regular scheduled hours because of variations in the patient census/scheduling demands of the hospital, she was entitled to "Hours of Service" credit for those "low census" hours, up to 208 per year, under the terms of the Frozen Plan.  *See* Dkt. #31, p. 13; AR 123; *See also* AR 1102, 1117 (union agreements, addressing "low census" hours and fringe benefits).  The union agreements confirm:

> Nurses shall not suffer the loss of any fringe benefits as a result of not working one of their scheduled working days at the request of Hospital, except as specifically provided otherwise in this Agreement.

AR 1107 (Art. 5, paragraph H, "Hours of Work"); *see also* AR 1144.  Ms. Erickson's fringe benefits include "Hours of Service" credit for the determination of her retirement benefit.  She was not paid for those hours; therefore, they are not reflected in her earnings, but they count for "Hours of Service".  AR 123 (Sec. 3(A): "You also receive Hours of Service for time off without pay due to low census… for no more than 208 hours within a Plan Year.  Subject to the 208-hour maximum, for each mandatory day off, you will be credited with the Hours of Service you would have received for that day had you not had a mandatory day off."); *See* Dkt. #31, p. 10.

### 2. HMC's own records over a 28-year period are further evidence that HMC did not credit Ms. Erickson's "low census" hours for 1996, 2000 and 2001.

HMC's hourly records document an abrupt increase in 2002 in HMC's crediting of "low census" hours to Ms. Erickson, suggesting that HMC began to better account for "low census" hours in 2002. AR 315-421.  The number of pay periods per year in which HMC credited Ms. Erickson with "low census" hours and the total "low census" hours HMC credited, by year, are shown in the table below:

/ /

/ /

/ /

/ /

/ /

/ /

/ /

| Year | Number of Pay Periods in Which HMC Credited Low Census Hours/Total Number of Pay Periods | Total Low Census Hours HMC Credited to Ms. Erickson Per Year | AR |
|---|---|---|---|
| 1993 | 0/26 | 0 | 315 |
| 1994 | 0/26 | 0 | 315-19 |
| 1995 | 1/26 | 9 | 319-23 |
| 1996 | 1/26 | 9 | 323-26 |
| 1997 | 2/27 | 18 | 326-30 |
| 1998 | 0/26 | 0 | 330-33 |
| 1999 | 1/26 | 9 | 333-37 |
| 2000 | 0/26 | 0 | 337-40 |
| 2001 | 0/26 | 0 | 340-43 |
| 2002 | 9/26 | 72.5 | 343-46 |
| 2003 | 18/26 | 79.75 | 346-49 |
| 2004 | 19/26 | 138 | 349-52 |
| 2005 | 10/26 | 36.25 | 352-56 |
| 2006 | 11/26 | 27.75 | 356-61 |
| 2007 | 18/26 | 61.75 | 361-65 |
| 2008 | 17/26 | 71 | 365-71 |
| 2009 | 18/26 | 143.5 | 371-76 |
| 2010 | 19/26 | 222.75 | 376-81 |
| 2011 | 22/26 | 179.5 | 381-86 |
| 2012 | 14/26 | 240 | 386-90 |
| 2013 | 21/26 | 289.25 | 390-95 |
| 2014 | 20/26 | 243.5 | 395-99 |
| 2015 | 19/26 | 218.75 | 399-403 |
| 2016 | 19/26 | 261 | 403-07 |
| 2017 | 20/26 | 210.75 | 407-11 |
| 2018 | 21/26 | 106.5 | 411-16 |
| 2019 | 23/26 | 200.5 | 416-20 |
| 2020 | 7/13 | 97.5 | 420 |

The following tables illustrate that Ms. Erickson's "low census" hours were documented much more frequently in the period 2002-2020 than they were in the period 1993-2001. The examples, from HMC's hourly records documentation, show that in the later period, there were fewer missing/unaccounted regular scheduled hours and that for the majority of pay periods, the

credited regular hours (column 4) plus "low census" hours (column 5) equal Ms. Erickson's scheduled regular hours (column 3):

| Year | Pay Period | Scheduled Regular Hours | Credited Regular Hours | Credited Low Census Hours | Missing Hours | AR |
|---|---|---|---|---|---|---|
| 1996 | 5 | 54 | 36 | 0 | 18 | 324 |
| 1996 | 8 | 54 | 36 | 0 | 18 | 324 |
| 2000 | 10 | 36 | 27 | 0 | 9 | 338 |
| 2000 | 22 | 36 | 27 | 0 | 9 | 339 |
| 2001 | 3 | 36 | 27 | 0 | 9 | 341 |
| 2001 | 19 | 36 | 27 | 0 | 9 | 342 |

| Year | Pay Period | Scheduled Regular Hours | Credited Regular Hours | Credited Low Census Hours | Missing Hours | AR |
|---|---|---|---|---|---|---|
| 2002 | 13 | 40 | 32 | 8 | 0 | 344 |
| 2006 | 9 | 40 | 38.25 | 1.75 | 0 | 358 |
| 2008 | 2 | 54 | 53.25 | .75 | 0 | 366 |
| 2008 | 17 | 72 | 67.25 | 4.75 | 0 | 369 |
| 2011 | 9 | 72 | 49.5 | 22.5 | 0 | 383 |
| 2012 | 3 | 72 | 53 | 19 | 0 | 386 |
| 2015 | 6 | 72 | 58 | 14 | 0 | 400 |
| 2018 | 26 | 72 | 71.5 | .5 | 0 | 416 |
| 2020 | 7 | 72 | 11 | 61 | 0 | 421 |

The tables are consistent with Ms. Erickson's statements that "volunteering to take 'low census' hours for the period 1993 through 2001 was consistent with my volunteering to take 'low census' hours for the period 2002 through 2020" and that "I did not dramatically increase my volunteering to take 'low census' hours" beginning in 2002." Dkt. #33, ¶ 7.

   3. **HMC's example supports plaintiff Erickson.**

Using an example of HMC's crediting of Ms. Erickson's hours in 1996, Defendants argue that Ms. Erickson's hours for 1996 would total only 972 hours worked if she had worked all of

her budgeted hours – which was still less than the 1,000 hours required for 1996 to count as a "Year of Benefit Service":

> Assuming that Erickson worked her budgeted 54 hours per pay period in January-March 1996, and her budgeted 36 hours the remainder of the year, the end result would be 972 hours worked–just slightly above the 959.71 hours reflected in HMC's records.

Dkt. #30, p.13.  They are incorrect.  Indeed, their example highlights the arbitrariness of their determination that Ms. Erickson was not to be credited with a "Year of Benefit Service" for 1996.

Ms. Erickson held a 54-hour scheduled position from January 1, 1996 through **July 10, 1996, not March 1996.**  She began her 36-hour scheduled position on **July 11, 1996**. AR 987, 1013.  She worked 14 pay periods in her 54-hour position, 11 pay periods in her 36-hour position, and 1 pay period in a hybrid 54-hour/36-hour pay position, in 1996.  Therefore, even excluding the hours for the hybrid period, she worked 1,152 hours (14 pay periods x 54 hours = 756 hours; 11 pay periods x 36 hours = 396 hours; 756 hours + 396 hours = 1,152 hours) in 1986.  By Defendants' own example, 1996 would qualify as a "Year of Benefit Service."

### 4. 1996 also qualifies as "Year of Benefit Service" based upon HMC's failure to keep records.

Plaintiff has shown that there is a second reason that 1996 qualifies as a "Year of Benefit Service": HMC did not keep records of Ms. Erickson's service for pay periods 16 and 17 of 1996, which were pay periods in July and August where she was credited with at least one Hour of Service.  See Dkt. #31, pp. 12-13 and AR 325.  Because HMC failed to keep records, Ms. Erickson is entitled to an additional 190 Hours of Service for each of those months under the Plan.  See AR 23, 751.  HMC had credited Ms. Erickson with 136.46 hours for July and August (AR 325), which, when subtracted from 380 hours, leaves a difference of 243.54 hours.  The

243.54 hours for July and August, when added to HMC's 959.71 calculated hours, totals 1,203.25 "Hours of Service" for 1996, which qualifies 1996 as a "Year of Benefit Service" for Ms. Erickson. *See* Dkt. 31, pp. 13-14.

Defendants do not address this issue, other than to generally claim that HMC's determination "was founded upon its payroll records and consideration of the factors that Erickson had identified." Dkt. #30, p. 12. As shown, however, HMC's records are incomplete records. HMC is not only missing hourly records for pay periods 16 and 17, but its hourly records also provide no documentation regarding Ms. Erickson's 326.97 unaccounted for regular scheduled hours in 1996. *See* Dkt. #31, pp. 12-13; p. 7, *supra*.

> **5. Other arbitrary determinations by HMC regarding Ms. Erickson's retirement plan benefit and other instances in which HMC has failed to maintain material records reveal a pattern of arbitrary conduct.**

The incompleteness of HMC's records in multiple instance and the errors in Defendants' determination of Ms. Erickson's retirement benefit, shown above and in Plaintiff's motion, are consistent with their overall arbitrary record-keeping on behalf of Ms. Erickson:

- HMC's payroll records for Ms. Erickson are incomplete:

  - 1987: missing pay periods 1 through 4. *See* AR 763.
  - 1991: missing pay periods 1 and 2. *See* AR 758.
  - 1992: missing pay period 16. *See* AR 756.
  - 1996: missing pay periods 16, 17. *See* AR 751.
  - 2001: missing pay period 17. *See* AR 744.
  - 2012: missing pay periods 10-15. *See* AR 730.

- HMC's hourly records for Ms. Erickson are incomplete:

  - Hours before 1993 "cannot be broken down by pay period." AR 435 (Tuality).
  - 1993: Ms. Erickson's hours are missing for pay periods 1-24. *See* AR 315.
  - 1996: Ms. Erickson's hours are missing for pay periods 16, 17. *See* AR 325.
  - 2001: Ms. Erickson's hours are missing for pay period 17. *See* AR 342.
  - 2012: Ms. Erickson's hours are missing for pay periods 10-15. *See* AR 387.

- HMC failed to credit Ms. Erickson's "low census" hours for years other than 1996, 2000 and 2001:

    - 1993: 54 missing or unaccounted hours.  *See* AR 315.
    - 1994: 505.5 missing or unaccounted hours.  *See* AR 315-19.
    - 1995: 447.25 missing or unaccounted hours.  *See* AR 319-23.
    - 1997: 23.41 missing or unaccounted hours.  *See* AR 326-30.
    - 1998: 23.29 missing or unaccounted hours.  *See* AR 330-33.
    - 1999: 25 missing or unaccounted hours.  *See* AR 333-37.

- As Transamerica conceded in litigation, it erroneously calculated Ms. Erickson's Cash Balance retirement benefit, causing it to pay the correct benefit, plus interest, in arrears in May, 2023.  *See* Dkt. #31, p. 5.

Citing *Estate of Dick by & through Dick v. Deseret Mut. Benefit Administrators*, No. 2:21-CV-01194-HL, 2023 WL 2071523, at *4 (D. Or. Feb. 17, 2023), Defendants argue that HMC conducted "a thorough review of all records available to it and responded to [Ms.] Erickson's inquiry [regarding the calculation of her retirement benefit] with an explanation that included a discussion of the relevant Plan terms, the issues Erickson had raised, the data reflected in HMC's records, and copies of the data that HMC relied upon." Dkt. #30, p.12.  HMC's payroll and hourly records, however, including those for the three years at issue, 1996, 2000, and 2001, are incomplete.  Defendants relied upon the incomplete records in determining that those three years did not qualify for Years of Benefit Service.  *Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trustees*, 588 F.3d 641, 649 (9th Cir. 2009), quoted in *Estate of Dick,* supports Ms. Erickson's argument.  *Anderson* holds that "[a] plan administrator abuses its discretion if it …construes provisions of the plan in a way that conflicts with the plain language of the plan, or fails to develop facts necessary to its determination." *Id.* at 649.  HMC arbitrarily relied upon its incomplete records and failed to follow the Plan's provisions in crediting Ms. Erickson's "low census" hours as Hours of Service in concluding that 1996, 2000, and 2001 did not qualify as "Years of Benefit Service."

**PLAINTIFF'S RESPONSE -** Page 13 of 16

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

B. **Transamerica is a Proper Defendant.**

"[P]roper defendants under §1132(a)(1)(B) for improper denial of benefits at least include ERISA plans, formally designated plan administrators, insurers or other entities responsible for payment of benefits, and de facto plan administrators that improperly deny or cause improper denial of benefits." *Spindex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.,* 770 F.3d 1282, 1297 (9th Cir. 2014). Transamerica argues that it is not a proper defendant because HMC is the "sponsoring company that funds the plan, and is the plan administrator responsible for resolving Erickson's claims for benefits". Transamerica mistakenly asserts there is no evidence that it erred in calculating Ms. Erickson's benefits or that it is a fiduciary or that it breached fiduciary duties regarding the issues raised in Ms. Erickson's Complaint. Dkt. #34, pp. 2-3.

The Pension Services Agreement, between Transamerica and HMC, describes Transamerica's Fiduciary Duties. The "General Provisions" section confirms that Transamerica acts as a fiduciary. AR 1229 (Section III, ¶ 1). The "Outsourcing/ Fiduciary Services" section confirms that "TRS agrees to assume fiduciary responsibility only for the proper execution of the specific and agreed-upon administrative procedures for the outsourcing services as outlined in this Section II." AR 1227(Section II). The "Retiree and Death Administration" section states:

> TRS will provide retiree and death payment administration services, including preparation of Benefit Election forms reflecting benefit amounts payable under applicable forms of payment, payment processing, acceptance of participant-submitted indicative data changes (e.g., address) and beneficiary maintenance. TRS will also track participants in pay status and process changes that impact the payment of benefits (e.g. status changes, tax withholding election changes, electronic transfer changes, death/survivor benefit, etc.).

*Id.* (Section II (B)).

In its April 9, 2021 letter to Ms. Erickson, Transamerica acknowledged that it was the "recordkeeper" for HMC. AR 191. As recordkeeper and under the terms of the Pension Services Agreement, Transamerica had fiduciary duties for retiree payment administration services in identifying and correcting in a timely manner transaction processing errors. AR 1239. Transamerica's April 2021 audit that identified an overpayment of Ms. Erickson's pre-1988 monthly retirement benefit (AR 191) provides an example of Transamerica performing its fiduciary duties.

Contrary to Transamerican's assertion that there is "no evidence of any error by Transamerica in calculating her benefits" (Dkt. #34, p. 3), its audit revealed that it erred in calculating Ms. Erickson's retirement benefit, as it admitted in its April 9, 2021 letter. AR 191. *See* Dkt. #31, pp. 4-5, p. 21 n 9, and pp. 3-4, *supra*; *See also Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 645 (9th Cir. 2019) (there are two types of fiduciaries, a "named fiduciary" designated in the plan as a fiduciary and a "functional" fiduciary who exercises discretionary authority or control over the administration of a plan or its assets). Transamerica is a fiduciary because it had fiduciary duties under the terms of the Pension Services Agreement and because it exercised control over the administration of retiree payments. *See* AR 1227, 1229.

For all of these reasons, Transamerica is a proper defendant. Therefore, its motion for dismissal should be denied.

/ /

/ /

/ /

/ /

**PLAINTIFF'S RESPONSE -** Page 15 of 16

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment Should be denied.

DATED this 9th day of June, 2023.

           Respectfully Submitted,

           MEGAN E. GLOR ATTORNEYS AT LAW, P.C.

           s/*John C. Shaw*
           John C. Shaw, OSB No. 065086
           s/*Megan E. Glor*
           Megan E. Glor, OSB No.930178
           Tel: (503) 223-7400

           Attorneys for Plaintiff